[No. H031451. Sixth Dist. Nov. 26, 2008.]

MICHAEL PAIVA, Plaintiff and Respondent, v.
JAMES NICHOLS et al., Defendants and Appellants.

COUNSEL

Pedersen, Siehl & Brodies, Richard R. Pedersen; Hayes, Davis, Bonino, Ellingson, McLay & Scott, Mark G. Bonino and Cherie M. Sutherland for Defendant and Appellant James Nichols.

Wilson, Elser, Moskowitz, Edelman & Dicker and Michael C. Douglass for Defendant and Appellant Peter McSweeney.

Roeca Haas Hager, Russell S. Roeca, Daniel W. Hager; Willoughby, Stuart & Bening, Bradley A. Bening and Bruce D. MacLeod for Defendant and Appellant Caryn N. Fabian.

Gazzera, O'Grady & Stevens and Brian J. O'Grady for Plaintiff and Respondent.

OPINION

**DUFFY, J.**—The absence of probable cause for bringing a prior action is an essential element of a malicious prosecution claim. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 867 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*).) One way that a defendant can negate this element (and thereby defeat the claim) is by showing that an interim victory in the underlying case—such as the granting of a preliminary injunction in favor of the malicious prosecution defendant (the plaintiff in the prior case)—established probable cause. (*Fleishman v. Superior Court* (2002) 102 Cal.App.4th 350 [125 Cal.Rptr.2d 383] (*Fleishman*).) In the case before us, we decide whether defendants' failure to perfect their preliminary injunction by posting an undertaking precludes their assertion that they had probable cause to bring the prior case. We also consider whether nonattorneys—as is the case with attorneys (*Zamos v. Stroud* (2004) 32 Cal.4th 958 [12 Cal.Rptr.3d 54, 87 P.3d 802] (*Zamos*))—may be liable for malicious prosecution where they have probable cause to commence an action but later learn (while the case is still pending) that it lacks merit.

In 2004, James Nichols and Peter McSweeney, who were represented by Attorney Caryn Fabian, sued their across-the-street neighbor, respondent Michael Paiva, for trespass (the prior suit). Although Nichols and McSweeney obtained a temporary restraining order (TRO) and a preliminary injunction against Paiva, they were ultimately unsuccessful. Paiva in 2006 filed a malicious prosecution action arising out of the prior suit against Nichols, McSweeney, and Fabian (collectively, appellants). Each appellant filed a

motion to strike the complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[1] The court denied each of the motions to strike.

Appellants challenge the order denying their anti-SLAPP motions. They claim that their respective motions to strike should have been granted because (1) they established that the activity that was the subject of the complaint (i.e., initiation and prosecution of the prior suit) was protected activity under the anti-SLAPP statute, and (2) Paiva failed to meet his burden of demonstrating a probability of prevailing in this action. Appellants contend that under *Fleishman, supra,* 102 Cal.App.4th 350, the granting of the TRO and preliminary injunction in the prior suit established that they had probable cause for bringing that action. They also argue that Paiva failed to demonstrate that new facts or new law arose after the prior suit was initiated but before it was concluded that would have indicated to appellants that that suit was without merit; accordingly, there was no basis for Paiva's contention that the prior suit, although possibly initiated with probable cause, was later maintained without probable cause.

The prior suit was unquestionably protected activity under the anti-SLAPP statute. Further, we conclude from our de novo review of the matter that there was probable cause to initiate and maintain the prior suit. Accordingly, we hold that Paiva failed to meet his burden of showing a probability that he would prevail in his malicious prosecution action. We therefore reverse the order denying the three anti-SLAPP motions to strike brought on behalf of appellants.

## FACTS AND PROCEDURAL HISTORY

### I. *Prior Suit*

On March 30, 2004, Nichols and McSweeney, through their attorney, Fabian, filed suit in Santa Clara County Superior Court, naming as defendants Paiva and Pacific Gas and Electric (PG&E). (For convenience, in this part we refer to Nichols and McSweeney collectively as plaintiffs; Paiva and PG&E are collectively referred to as defendants.) The complaint alleged a single cause of action for trespass. It was alleged that Nichols and his wife were the owners of 1503 Topar Avenue and that McSweeney and his wife were the owners of 1497 Topar Avenue in Los Altos, California. The complaint alleged further that Paiva was the owner of the land and a large

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737] (*Jarrow Formulas*).)

All further statutory references are to the Code of Civil Procedure unless otherwise stated.

home located at 1510 Topar Avenue in Los Altos. Paiva obtained an encroachment permit allowing him to relocate aerial power lines servicing his property by burying the lines from his property, running them across Topar Avenue, and connecting them to a utility pole located on Nichols's property. The proposed work—which would have included trenching on Topar Avenue in front of the Nichols/McSweeney properties—was scheduled to commence on March 31, 2004. Plaintiffs alleged that PG&E held only a prescriptive easement to Topar Avenue and did not hold "sufficient rights to perform the work." They also alleged that in 1999, Paiva had made two similar applications to obtain an encroachment permit, but PG&E had refused to perform the work because it "[did] not have sufficient rights." Plaintiffs opposed the relocation of Paiva's power lines because it would (1) interfere with enjoyment of their properties, (2) impose an excessive burden on them, and (3) exacerbate drainage problems resulting from Paiva's failure to complete drainage work on his property.

At the time the complaint was filed, Nichols and McSweeney applied for and obtained—based upon the verified complaint and the declaration of Fabian and apparently on a declaration from McSweeney[2]—a TRO preventing Paiva and PG&E from relocating Paiva's power lines, pending a hearing on plaintiffs' application for a preliminary injunction.[3] The hearing on the preliminary injunction application was originally set by an order to show cause (OSC) for April 2, 2004. It was continued by the court; at the time of the continuance, the court also extended the TRO, pending the hearing and determination of the OSC. After a hearing on April 23, 2004, the court signed a minute order granting the application for preliminary injunction. The court found that "[b]ased upon the evidence, the prescriptive easement over the 40 foot width of Topar Avenue is for ingress and egress only. This easement is limited to surface use and does not permit underground excavation." A formal order granting the preliminary injunction was entered in June 2004; it required that plaintiffs file a $50,000 undertaking to indemnify defendants for any damage they might sustain in the event it were ultimately determined that plaintiffs were not entitled to injunctive relief. In September 2004, upon application by Paiva, the court entered an order dissolving the preliminary injunction.

---

[2] The TRO application indicated that it was based upon, among other things, McSweeney's declaration. Paiva's references in his opposition to the anti-SLAPP motions and in his appellate brief to averments made by McSweeney in support of the request for TRO and preliminary injunction notwithstanding, McSweeney's declaration is not part of the record.

[3] Paiva filed opposition to the ex parte application for TRO.

The case proceeded to trial in July 2005.[4] The court denied plaintiffs' request for permanent injunctive relief. A formal judgment was entered in August 2005.

## II. *Present Malicious Prosecution Action*

On September 26, 2006, Paiva filed a complaint for malicious prosecution against appellants. He alleged that as a condition of the issuance of a building permit by the County of Santa Clara (County), he was required to place utility lines servicing his property underground and across Topar Avenue to the existing utility pole located on Nichols's property. The County had issued an encroachment permit authorizing PG&E to complete the work to place Paiva's utility lines underground. It was alleged further in the complaint that McSweeney and Nichols, represented by Fabian, initiated the prior suit against Paiva in which they falsely asserted that he "did not have easement rights or other legal rights sufficient to enable him to cause PG&E to underground utilities across Topar Avenue and connect them to the above ground utility pole on the property of Nichols." Paiva alleged that the prior suit's claims "were entirely without basis in law or fact" and that appellants had acted without probable cause in bringing the prior suit against him. He also alleged that after the prior suit was commenced, appellants received notice of facts establishing that there were easement rights "legally sufficient to support the undergrounding of utilities by Paiva and PG&E," and that despite this notice, appellants continued to prosecute the prior suit. It was alleged that Paiva ultimately obtained a favorable determination in the prior suit when the court denied the request of Nichols and McSweeney for a permanent injunction.

Each appellant filed an anti-SLAPP motion to strike the complaint. Appellants contended that (1) the malicious prosecution action arose out of an act that was in furtherance of their constitutionally protected petition rights and was therefore potentially subject to a motion to strike under the anti-SLAPP statute; (2) Paiva bore the burden of showing through admissible evidence a reasonable probability that he would prevail on his claim; and (3) the malicious prosecution claim was without merit because Paiva could not prove

---

[4] In his opposition to the motions to strike and in his appellate brief, Paiva makes reference to a nonbinding judicial arbitration award rendered in the prior suit pursuant to section 1141.10 et seq. The court below denied Paiva's request for judicial notice of that nonbinding award and he has not challenged that ruling on appeal. In any event, we believe that reference to this nonbinding award is improper and therefore do not refer to it in our discussion of the prior suit or elsewhere in this opinion. (See Cal. Rules of Court, rule 3.826(c) [prohibiting any reference at trial to rejected arbitration award or to any other aspect of judicial arbitration proceedings]; *Jimena v. Alesso* (1995) 36 Cal.App.4th 1028, 1030–1031 [43 Cal.Rptr.2d 18] [testimony at judicial arbitration inadmissible to impeach expert at trial].)

that appellants lacked probable cause to bring the prior suit, and, indeed, the court's granting of the preliminary injunction established that appellants had such probable cause.

After the filing of extensive opposition and reply papers, the court heard and denied the motions to strike. Appellants each filed timely notices of appeal from the order.[5] An order denying an anti-SLAPP motion to strike is a proper subject for appeal, pursuant to sections 425.16, subdivision (i) and 904.1. (*Chambers v. Miller* (2006) 140 Cal.App.4th 821, 824 [44 Cal.Rptr.3d 777]; *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 839 [36 Cal.Rptr.3d 385].)

## DISCUSSION

### I. *Issues on Appeal*

Relevant questions to the disposition of this case include the following:

1. Whether the cause of action in the complaint arose out of activity that is protected by the anti-SLAPP statute.

2. Whether Paiva presented evidence sufficient to support the conclusion that there was a reasonable probability that he would prevail on his malicious prosecution claim. This issue is resolved by deciding the twin questions of whether there was probable cause to initiate the prior suit, and if so, whether appellants continued to have probable cause to prosecute it to its ultimate (unsuccessful) conclusion.

### II. *Anti-SLAPP Motions to Strike*

■ A "SLAPP" suit "seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 [39 Cal.Rptr.3d 516, 128 P.3d 713].) Thus, a lawsuit arising from constitutionally protected speech or petitioning activity is a SLAPP suit if it "lacks even minimal merit." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).)

SLAPP suits may be disposed of summarily by a special motion to strike under section 425.16, commonly known as an "anti-SLAPP motion," which is

---

[5] The Nichols and McSweeney appeals were assigned case No. H031451, and the Fabian appeal was assigned case No. H031498. We ordered the two cases consolidated and ordered that all proceedings be conducted under case No. H031451.

"a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].) The statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) As is relevant to this appeal, the statute defines " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " as including "any written or oral statement or writing made before a legislative, executive, or judicial proceeding . . . ." (*Id.*, subd. (e)(1).)

■ A motion to strike under section 425.16 is analyzed and resolved by "the court . . . engag[ing] in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) Thus, "[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier, supra*, 29 Cal.4th at p. 89.)

### III. *Appellate Review of Order Granting Anti-SLAPP Motion*

We have previously summarized the standard for an appellate court's review of the granting of an anti-SLAPP motion. We repeat that summary here. "We review de novo a trial court's ruling on a motion to strike under section 425.16 by 'conducting an independent review of the entire record. [Citations.]' (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786]; see also *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569 [31 Cal.Rptr.3d 368].) [¶] Thus, our review is conducted in the same manner as the trial court in considering an anti-SLAPP motion. In determining whether the defendant . . . has met its initial burden of establishing that the plaintiff's . . . action arises from protected activity, we consider 'the pleadings, and supporting and opposing affidavits stating the

facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2); see also *City of Cotati v. Cashman* [(2002)] 29 Cal.4th [69,] 79 [124 Cal.Rptr.2d 519, 52 P.3d 695]; *Navellier, supra*, 29 Cal.4th at p. 89.) The second prong—i.e., whether the plaintiff . . . has shown a probability of prevailing on the merits—is considered under a standard similar to that employed in determining nonsuit, directed verdict or summary judgment motions. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010 [113 Cal.Rptr.2d 625].) '[I]n order to establish the requisite probability of prevailing [citation], the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " [Citations.] "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " [Citations.]' (*Navellier, supra*, at pp. 88–89.) [¶] As is true with summary judgment motions, the issues in an anti-SLAPP motion are framed by the pleadings. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 655 [49 Cal.Rptr.2d 620], disapproved on other grounds in *Equilon, supra*, 29 Cal.4th at p. 68, fn. 5.) The plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence. (*ComputerXpress, Inc. v. Jackson, supra*, 93 Cal.App.4th at p. 1010.) In reviewing the plaintiff's evidence, the court does not weigh it; rather, it simply determines whether the plaintiff has made a prima facie showing of facts necessary to establish its claim at trial. (*Ibid.*)" (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672–673 [43 Cal.Rptr.3d 148].)

We review the court's orders here denying appellants' three motions to strike the complaint as a SLAPP suit with the above standard of review in mind.

### IV. *Motions to Strike Complaint—Protected Activity*

█ It is beyond question that the initiation and prosecution of the prior suit here—as involving "written or oral statement[s] or writing[s] made before a . . . judicial proceeding" (§ 425.16, subd. (e)(1))—were "act[s] . . . in furtherance of the person's right of petition" under the federal and state Constitutions (§ 425.16, subd. (b)(1)) protected under the anti-SLAPP statute. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1121 [81 Cal.Rptr.2d 471, 969 P.2d 564] [noting that intent of Legislature in enacting anti-SLAPP statute was "to protect all direct petitioning of governmental bodies (including . . . courts . . .)"].) Paiva conceded this point below and concedes it again on appeal. Further, the Supreme Court has held that malicious prosecution claims are not exempt from anti-SLAPP motions. (*Jarrow Formulas, supra*, 31 Cal.4th 728.) We proceed to the second prong in

assessing the merits of appellants' motions to strike: whether Paiva made a prima facie showing of the probable validity of his malicious prosecution claim.

### V. *Motions to Strike Complaint—Probability of Prevailing on Claim*

#### A. *Malicious Prosecution Claims Generally*

Malicious prosecution has long been considered a disfavored tort both because of "its 'potential to impose an undue "chilling effect" on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court' [citation] and because, as a means of deterring excessive and frivolous lawsuits, it has the disadvantage of constituting a new round of litigation itself [citation]." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817 [123 Cal.Rptr.2d 19, 50 P.3d 733] (*Wilson*); but see *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 349 [9 Cal.Rptr.3d 97, 83 P.3d 497] [malicious prosecution claim will not be barred simply because of tort's disfavored status].) Thus, as our high court has observed, "the elements of the tort have historically been carefully circumscribed [in California] so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel, supra,* 47 Cal.3d at p. 872.) Although it acknowledged that the flood of litigation in recent years has caused a reassessment of the " 'disfavored' status of the malicious prosecution tort" (*ibid.*), the Supreme Court declined the invitation to "abandon or relax the traditional limitations on malicious prosecution recovery" (*id.* at p. 874).

■ A plaintiff in a malicious prosecution action "must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608].) Unlike the malice element, which is a factual question, the issue of whether there was an absence of probable cause in bringing the prior case is a question of law to be determined by the court. (*Sheldon Appel, supra,* 47 Cal.3d at pp. 874–875.)

The presence or absence of probable cause is viewed under an objective standard applied to the facts upon which the defendant acted in prosecuting the prior case. (*Sheldon Appel, supra,* 47 Cal.3d at pp. 878, 881.) The test of determining probable cause is whether any reasonable attorney would have thought the claim to be tenable. (*Id.* at p. 886.) This "less stringent" standard (*id.* at p. 885) is based upon the *Flaherty* test (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]) for determining

frivolous appeals, and "more appropriately reflects the important public policy of avoiding the chilling of novel or debatable legal claims" (*Sheldon Appel, supra*, at p. 885). The standard is thus designed to accommodate the requirement that the court "properly take into account the evolutionary potential of legal principles. [Citation.]" (*Id.* at p. 886.)

■ Hence, "probable cause to bring an action does not depend upon it being meritorious, as such, but upon it being *arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable. [Citation.]" (*Wilson, supra*, 28 Cal.4th at p. 824.) " 'Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .' [Citation.]" (*Sheldon Appel, supra*, 47 Cal.3d at p. 885, quoting *In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 650.) Expanding on this notion, the Third District Court of Appeal has explained, "Consideration of this question [of whether the underlying suit was legally tenable] requires that the court take account of the evolutionary potential of legal principles and any uncertainty which might be embedded there. [Citation.] 'To hold that the person initiating civil proceedings is liable unless the claim proves to be valid, would throw an undesirable burden upon those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions. There are many instances in which a line of authority has been modified or rejected. To subject those who challenge this authority to liability for wrongful use of civil proceedings might prove a deterrent to the overturning of archaic decisions.' [Citations.]" (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 568 [264 Cal.Rptr. 883].)

Here, the issue of whether Paiva met his burden in opposing the anti-SLAPP motions of showing a probability that he would prevail on his malicious prosecution claim turns on whether he satisfied the second element, i.e., that appellants did not have probable cause for initiating and maintaining the prior suit. (See *Sheldon Appel, supra*, 47 Cal.3d at p. 868 [if "court finds that the prior action was in fact tenable, probable cause is established . . . and the malicious prosecution action fails . . ."]; see also *Fleishman, supra*, 102 Cal.App.4th at p. 359 [malicious prosecution plaintiff's inability to show that prior case was brought without probable cause compelled conclusion that the defendant's motion for judgment on the pleadings should have been granted].)[6] Probable cause is established by showing that the "claim . . . is legally sufficient and can be substantiated by competent evidence . . . ."

---

[6] Paiva argues on appeal that appellants acted with malice in prosecuting the prior suit. Fabian addresses this issue in some detail in her reply brief. Since this appeal may be resolved by determining the legal question of probable cause, we need not address whether Paiva presented sufficient evidence to support a finding—ordinarily reserved for the trier of fact (*Sheldon Appel, supra*, 47 Cal.3d at p. 874)—that appellants acted with malice in prosecuting

(*Wilson, supra*, 28 Cal.4th at p. 821.) Paiva seemingly concedes that appellants stated a legally sufficient claim for trespass in the prior suit. It is the second aspect of probable cause that is at issue.

Paiva contends that appellants did not have probable cause to initiate the prior suit. He argues further that even if appellants had probable cause to initiate the prior suit, they later had at their disposal new facts and new law that made their continuation of the suit tortious. In support of this position, Paiva cites *Zamos, supra*, 32 Cal.4th 958, in which the court held that an attorney who initiates suit with probable cause but continues to prosecute it after learning that it is not supported by probable cause may be liable for malicious prosecution. We therefore address separately whether appellants had probable cause to (1) initiate and (2) continue to prosecute the prior suit.

### B. Probable Cause to Initiate Prior Suit

Appellants each contend that probable cause for their initiation of the prior suit is established under *Fleishman, supra*, 102 Cal.App.4th 350, based upon the court's issuance of a preliminary injunction against Paiva and PG&E in the prior suit. Paiva responds that (1) *Fleishman* was overruled by the Supreme Court in *Zamos, supra*, 32 Cal.4th 958, (2) *Fleishman* should not apply here because the preliminary injunction never became effective due to the failure of McSweeney and Nichols to file an undertaking, and (3) the preliminary injunction was procured through appellants' fraud.

### 1. Fleishman v. Superior Court

■ Under established law, certain nonfinal rulings on the merits may serve as the basis for concluding that there was probable cause for prosecuting the underlying case on which a subsequent malicious prosecution action is based. (*Wilson, supra*, 28 Cal.4th at pp. 817–818.) This principle—utilizing the "rather lenient standard" of probable cause as enunciated under *Sheldon Appel, supra*, 47 Cal.3d 863 (*Wilson, supra*, at p. 817)—is based upon the notion that "[c]laims that have succeeded at a hearing on the merits, even if that result is subsequently reversed by the trial or appellate court, are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness." (*Wilson*, at p. 818.)

The procedural circumstances under which a prior ruling will be deemed to show probable cause are varied. For instance, the denial of a nonsuit motion and a subsequent plaintiff's jury verdict will constitute probable cause, even

the prior suit. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 [57 Cal.Rptr.3d 363] [appellate courts will not address issues whose resolution is unnecessary to disposition of appeal].)

if the trial court or appellate court later reverses that verdict. (*Cowles v. Carter* (1981) 115 Cal.App.3d 350, 356 [171 Cal.Rptr. 269]; see also *Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1052–1053 [79 Cal.Rptr.3d 822] [designer's success before Board of Patent Appeals established probable cause, notwithstanding fact that designer's victory was reversed by appellate court].) Likewise, the denial of a defense summary judgment motion "normally establishes there was probable cause to sue, thus barring a later malicious prosecution suit." (*Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 384 [90 Cal.Rptr.2d 408].)

In *Wilson, supra,* 28 Cal.4th at page 821, the Supreme Court extended this principle to the denial of an anti-SLAPP motion based on a finding that the plaintiff has shown a probability of success. The court reasoned that in denying an anti-SLAPP motion on this basis, "the trial court necessarily concludes that the plaintiff has substantiated a legally tenable claim through a facially sufficient evidentiary showing and that the defendant's contrary showing, if any, does not defeat the plaintiff's as a matter of law. This determination establishes probable cause to bring the claim, for such an action clearly is not one that ' "any reasonable attorney would agree . . . is totally and completely without merit." ' [Citation.] A claim that is legally sufficient and can be substantiated by competent evidence is, on the contrary, one that a 'reasonable attorney would have thought . . . tenable.' [Citation.] The opposite rule, permitting such claims to form the basis for malicious prosecution liability, would unduly limit the right to invoke judicial remedies in pursuit of nonfrivolous claims. [Citation.]" (*Ibid.*)

In *Fleishman, supra,* 102 Cal.App.4th at page 353, an employee was sued by his former employer in a prior case that included a claim for misappropriation of trade secrets. The court granted the former employer's application for a TRO and subsequently granted a preliminary injunction. (*Ibid.*) The former employer later dismissed the case without prejudice and the employee brought an action for malicious prosecution against the attorney for the former employer. (*Id.* at p. 354.) The attorney's demurrer and motion for judgment on the pleadings were overruled by the trial court (*ibid.*); the attorney sought writ relief with the appellate court, claiming that the granting of the preliminary injunction in the prior case established probable cause, thereby negating the employee's malicious prosecution action. (*Id.* at p. 353.)

The Court of Appeal agreed with petitioner. Relying on *Wilson, supra,* 28 Cal.4th 811, the court reasoned that "[i]f the denial of an anti-SLAPP motion based on the action's potential merit conclusively establishes probable cause for the action, the issuance of a preliminary injunction must have the same effect." (*Fleishman, supra,* 102 Cal.App.4th at p. 355.) It explained that the issuance of an injunction involves " ' " ' . . . the exercise of a delicate

power, requiring great caution and sound discretion, and rarely, if ever, should [it] be exercised in a doubtful case. . . .' " [Citations.]' [Citation.] 'In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction. [Citations.]' [Citation.] '[A]n injunction pendente lite must not issue unless it is reasonably probable that the moving party will prevail on the merits [citations] . . . .' [Citations.]" (*Id.* at pp. 355–356.) Because of the close scrutiny given by the court in evaluating a request for injunctive relief, including the weighing of evidence and assessment of the credibility of witnesses—a process which the *Fleishman* court observed involves a more careful examination than occurs in deciding an anti-SLAPP motion (*id.* at p. 356)—the court concluded that the issuance of a preliminary injunction "conclusively establishe[d] probable cause for bringing the underlying causes of action" (*id.* at p. 357).

Here, as in *Fleishman*, appellants were successful in obtaining a TRO and a preliminary injunction. The court in the prior suit conducted two hearings; the first resulted in extending the TRO, and the second hearing resulted in the granting of the preliminary injunction. Paiva appeared through counsel at both hearings. He filed written opposition to the request for injunctive relief that included two legal memoranda and two declarations.[7] The second memorandum filed on Paiva's behalf had at least 10 exhibits attached to it. After considering the parties' submissions and after holding two hearings, the court granted the preliminary injunction sought by Nichols and McSweeney. In so doing, the court considered the evidence and balanced the equities in concluding that "there [was] a reasonable probability that plaintiff[s would] be successful in the assertion of [their] rights. [Citations.]" (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].) Notwithstanding the fact that Nichols and McSweeney did not prevail at trial, their prior suit, as a result of the granting of the preliminary injunction, constituted a "[c]laim[] that . . . succeeded at a hearing on the merits" for purposes of establishing probable cause. (*Wilson, supra*, 28 Cal.4th at p. 818.) Accordingly, under *Fleishman, supra*, 102 Cal.App.4th 350, the granting of the preliminary injunction in favor of Nichols and McSweeney conclusively established that appellants had probable cause to initiate the prior suit.[8]

---

[7] One of Paiva's memoranda and one of his declarations filed in opposition to the preliminary injunction application was included in a request for judicial notice filed by Fabian in this court. We granted that request for judicial notice.

[8] Indeed, the circumstances here make for an even stronger case than those in *Fleishman* for a conclusive finding of probable cause. In *Fleishman*, the employee challenged (unsuccessfully) the significance of the court's issuance of a preliminary injunction in the underlying

## 2. *Effect of* Zamos v. Stroud

Paiva argues in passing that "the holding in . . . *Fleishman* . . . was considerably narrowed if not completely overruled by the Supreme Court's subsequent holding in" *Zamos, supra,* 32 Cal.4th 958. We disagree.

In *Zamos* (as we will discuss in greater detail below), the Supreme Court held that an attorney incurs malicious prosecution liability even if he or she had probable cause to file an action, if the attorney later learned of facts that made its continued prosecution not objectively tenable. (*Zamos, supra,* 32 Cal.4th at p. 971.) The Supreme Court in *Zamos* never mentioned *Fleishman* and never addressed whether the granting of a preliminary injunction in an underlying action results in the conclusive presumption that there was probable cause to bring suit. And *Fleishman* did not involve a situation such as *Zamos,* where probable cause for bringing the underlying suit was later undermined in the litigation by significant new evidence demonstrating to the attorney that the suit was meritless. We therefore reject Paiva's claim—based on language in *Fleishman,* quoting the Supreme Court, that " '. . . probable cause to bring an action depends on the facts known to the litigant or attorney at the time the action is brought' " (*Fleishman, supra,* 102 Cal.App.4th at p. 357, quoting *Wilson, supra,* 28 Cal.4th at p. 822, fn. 6)—that *Fleishman* was somehow implicitly overruled in *Zamos.*

The Supreme Court's holding in *Zamos* is relevant to our discussion, *post,* concerning Paiva's contention that even assuming that there was probable cause to initiate the prior suit, new facts available after issuance of the preliminary injunction should have informed appellants that there was no probable cause to continue to prosecute the suit. *Zamos,* however, does not affect our conclusion that there was probable cause under *Fleishman* to initiate the prior suit.

## 3. *Failure to post undertaking*

The court in the prior suit required the filing of a $50,000 undertaking, pursuant to section 529, subdivision (a),[9] in connection with the issuance of

---

case, arguing that " 'no real hearing took place' because the trial court erroneously precluded him from presenting evidence at the hearing . . . [and] that the basis for the court's preclusion ruling was that he 'had not filed a responsive pleading or opposition within the specified time period.' " (*Fleishman, supra,* 102 Cal.App.4th at p. 356.) By contrast, in the prior suit here, Paiva submitted substantial opposition to the injunction application that was considered by the court.

[9] "On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction. Within five days after

the preliminary injunction. Nichols and McSweeney failed to post that undertaking. Paiva argues that because of the absence of an undertaking, the preliminary injunction never became effective; thus, its issuance in the prior suit should not be treated as having established probable cause.

Paiva correctly notes that, subject to exceptions inapplicable here, the filing of an undertaking in connection with the issuance of a preliminary injunction is required by statute. (§ 529, subd. (a); see also *Oksner v. Superior Court* (1964) 229 Cal.App.2d 672, 687 [40 Cal.Rptr. 621] [preliminary injunction to preserve status quo issued without requirement of posting of bond "is a nullity"].) "[A] preliminary injunction does not become operative until a bond is furnished . . . ." (*Griffin v. Lima* (1954) 124 Cal.App.2d 697, 699 [269 P.2d 191].) While Paiva concedes that he is aware of no authority supporting his position, he contends that the failure to post a bond in the prior suit deprives appellants of the right to assert that the issuance of the preliminary injunction established probable cause. He argues that appellants should not be entitled to assert that the granting of injunctive relief established probable cause because they chose not to assume the financial risk of posting an undertaking to make the injunction effective. He claims that appellants in the prior suit made "an unsuccessful attempt to secure an injunction." We reject Paiva's argument.

■ Paiva is incorrect in his characterization of what transpired in the prior suit. Appellants *were* successful in obtaining an order for preliminary injunction based upon the showing they made to the trial court. They simply failed (for whatever reason) to perfect the order by filing the requisite undertaking. More importantly, we disagree with Paiva's premise that the failure to file an undertaking by a party who obtains injunctive relief deprives that party from asserting that the granting of the injunction establishes probable cause for bringing suit under *Fleishman, supra,* 102 Cal.App.4th 350. The rationale for the principle that the issuance of a preliminary injunction establishes probable cause is that the issuing court, after receiving evidence and legal argument from both sides and after conducting a hearing, has found that the plaintiff (the malicious prosecution defendant) is likely to succeed in the underlying case. (*Id.* at pp. 355–356.) The subsequent failure to post a bond to perfect the order has nothing to do with this principle; such failure does not in any way diminish the court's finding that the plaintiff is likely to prevail.

Moreover, we reject Paiva's contention that we should, in effect, punish appellants by not applying *Fleishman*, based upon their failure to post a bond.

the service of the injunction, the person enjoined may object to the undertaking. If the court determines that the applicant's undertaking is insufficient and a sufficient undertaking is not filed within the time required by statute, the order granting the injunction must be dissolved." (§ 529, subd. (a).)

While Paiva contends that the failure to post a bond here was the result of a conscious decision by appellants because "they lacked confidence in their legal position," there is no evidentiary support for this assertion. It is equally plausible—although likewise unsupported by the record—that Nichols and McSweeney did not post a bond because of financial constraints. The motivations of a preliminary injunction applicant in failing to post a bond are irrelevant to the question of the legal effect of the court's issuance of the injunction. Furthermore, following Paiva's suggestion would lead to inconsistent, arbitrary, and unfair results. A plaintiff unable to afford a bond ordered after issuance of a preliminary injunction would be subject to a subsequent malicious prosecution action, while another plaintiff financially able to post a bond—who may have presented no more convincing a case for injunctive relief than the first plaintiff—would face no such liability. Furthermore, the attorney representing the plaintiff in the underlying action would be at the mercy of his or her client: the attorney's potential liability for malicious prosecution would be determined, not by whether there was probable cause to initiate the underlying suit, but by the client's choice or financial ability to post a bond. In any event, the failure to post a bond does not diminish the legal significance of the court's prior issuance of a preliminary injunction.

Finally, we reject Paiva's assertion that applying *Fleishman* here in an instance in which Nichols and McSweeney failed to post a bond to perfect the preliminary injunction would leave him with no remedy. In essence, he argues that the consequences of the absence of a bond and the application of *Fleishman* in finding probable cause for the initiation of the prior suit are that he will be unable to recover damages resulting from any delay in the completion of his project to install utilities underground. But this argument is faulty. Since appellants did not post a bond, the preliminary injunction was legally ineffective; Paiva was not constrained from completing his project. Therefore, because he was free to complete the project, he could not seek damages that would ordinarily be recoverable through recourse to an injunction bond.

We therefore conclude that the failure of Nichols and McSweeney to post a bond to perfect the preliminary injunction issued in the prior suit has no impact on the resolution of the anti-SLAPP motions. Under *Fleishman, supra*, 102 Cal.App.4th 350, the issuance of the preliminary injunction established probable cause for the initiation of the prior suit, irrespective of the fact that the order never became legally effective because of the failure to post a bond.

### 4. *Fraud/perjury exception*

The principle that a favorable interim ruling on the merits will establish probable cause is subject to an exception in instances in which that

ruling was procured by fraud or perjury perpetrated by the plaintiff (the malicious prosecution defendant). (*Wilson, supra,* 28 Cal.4th at p. 820 [denial of anti-SLAPP motion to strike based upon showing of probability of success, unless ruling obtained by fraud or perjury, establishes probable cause].) Paiva contends that this exception applies to defeat appellants' argument that the granting of a preliminary injunction in the prior suit established probable cause. He asserts that the verified complaint and declarations in support of the preliminary injunction in the prior suit "contain[ed] substantial misrepresentations of facts that were known, or should have been known, to appellants." We reject this contention.

First, as to Nichols, there is no evidence that he personally submitted *any* evidence in support of the request for injunctive relief. The application for temporary restraining order and preliminary injunction was based upon a complaint verified by McSweeney and on declarations of Fabian and McSweeney (see fn. 2, *ante*). There is thus no factual basis to support Paiva's claim that the preliminary injunction was obtained on the basis of Nichols's misrepresentations.

Second, it is noteworthy that there is no evidence from the record of the prior suit that appellants made any alleged misrepresentations to induce the court to grant the TRO and preliminary injunction. The court did not sanction Nichols or McSweeney, or their attorney, Fabian, for alleged misrepresentations; indeed, Paiva points to nothing indicating that the court in the prior suit even criticized appellants for being less than forthright in their presentation of their case. And certainly there was no indication that an appellate court found that appellants had committed misrepresentations to obtain equitable relief. Despite Paiva's contention of fraud here, he failed to seek review of the preliminary injunction he claims was procured by fraud, notwithstanding the fact that it was a reviewable order. (See § 904.1, subd. (a)(6).)

Third, the matters that Paiva claims appellants misrepresented in obtaining the TRO and preliminary injunction in the prior suit—either by affirmative misstatement or by omission in their moving papers—were factual and legal issues raised by Paiva in his opposition papers. For instance, he argues that McSweeney misrepresented that his property would have been affected by Paiva's project of installing underground utilities. Any claim that the court in the prior suit was induced to grant injunctive relief based upon any alleged misrepresentation on this subject is belied by the fact that Paiva noted *in three separate filings* in opposition to the application for TRO and preliminary injunction that McSweeney's property was not across the street from Paiva's and would not be affected by the proposed project. Notwithstanding this opposition, the court, in granting the preliminary injunction, concluded that "[Paiva's] installation of the underground utilities would cause irreparable harm to the property of Nichols and probably to the property of

McSweeney."[10] Other matters that Paiva asserts appellants misrepresented—such as the failure to disclose the prior placement of underground utilities under Topar Road to benefit Nichols's property—were also raised in Paiva's opposition in the prior suit and therefore cannot have served as a fraudulent inducement for the issuance of the preliminary injunction.

Fourth, the claimed basis for the preliminary injunction in the prior suit was fully litigated at two contested hearings. Following its review of the moving and opposing papers and the matters argued at the hearings, the court concluded that the proposed project should be enjoined because "the prescriptive easement over the 40[-]foot width of Topar Avenue is for ingress and egress only. This easement is limited to surface use and does not permit underground excavation. Further, although Paiva argues that he must install the utilities underground, the evidence is that he may apply for a waiver of that requirement." The fact that Paiva presented opposing evidence in an unsuccessful effort to resist the granting of the TRO and preliminary injunction does not give rise to an inference that appellants obtained the interim equitable relief through fraud.

The granting of the preliminary injunction established probable cause for the initiation of the prior suit under *Fleishman, supra*, 102 Cal.App.4th 350. There is no basis for concluding that the injunction was procured through fraud. Accordingly, since there was probable cause to initiate the prior suit, we must now address Paiva's last contention, i.e., that additional facts or new law were available after the issuance of the preliminary injunction that made it legally untenable for appellants to continue to prosecute the case.

### C. *Probable Cause to Continue to Prosecute Prior Suit*

Paiva argues that even if there had been probable cause for appellants' initiation of the prior suit, under *Zamos, supra*, 32 Cal.4th 958, they were nonetheless liable for malicious prosecution—and the anti-SLAPP motions were therefore properly denied—because they continued to prosecute the case after having information available that established that it was meritless. After discussing *Zamos*, we will address Paiva's contention.

### 1. Zamos v. Stroud

*Zamos* involved three separate lawsuits and a rather confusing set of facts. In the first case, Attorneys Zamos and Okojie (collectively, Attorneys)—the

---

[10] The court found that "it appears that the area of proposed trenching is not on the property of McSweeney. (It appears very close, within [two] feet of the property line.) However, this preliminary injunction is issued in his favor to the extent that any excavation affects his property. It appears to the court that Paiva's property is uphill from plaintiffs' properties and that this trench may otherwise affect McSweeney's property."

plaintiffs in the (third) malicious prosecution case—represented Brookes (Client) in connection with a foreclosure lawsuit. (*Zamos, supra*, 32 Cal.4th at p. 961.) Client settled that case as to certain of the defendants after the conclusion of trial but before the jury returned a verdict; the settlement involved a payment of $250,000 to Client with the express understanding that she relinquished any interest in her house. (*Ibid.*)

In the second suit, Client, represented by Attorneys Stroud, Do, and their firm (collectively, the Stroud attorneys), sued Attorneys for fraud, contending that Zamos had fraudulently induced her to settle the first case by representing that he would (a) continue to represent her against nonsettling defendants in the foreclosure case; (b) represent her in a malpractice case against her former attorneys; (c) get her house returned to her; and (d) withdraw from representing her if she did not settle the foreclosure suit. (*Zamos, supra*, 32 Cal.4th at p. 961.) Shortly after service of the second suit, Attorneys sent to the Stroud attorneys copies of the reporter's transcripts of three hearings that Attorneys contended showed that the fraud suit was meritless. (*Id.* at pp. 961–962.) One of the transcripts "show[ed] that [Client] was told and agreed that she was releasing all claims to her house and that [Attorneys] would not substitute into the malpractice lawsuit." (*Id.* at p. 962.) Another hearing transcript included statements by Client to the court indicating she had no objection to Attorneys' being discharged as her counsel. (*Ibid.*) The Stroud attorneys refused to dismiss the case and the court denied " 'reluctantly' " Attorneys' summary judgment motion based upon the conclusion that Client's declaration raised a triable issue of fact. (*Ibid.*) Later, the trial judge, after reading the reporter's transcripts from the foreclosure case, repeatedly warned the Stroud attorneys that Client should be advised of her Fifth Amendment rights and opined that her anticipated trial testimony, if it contradicted the transcripts, would be perjurious. (*Ibid.*) Client did not testify at trial and Attorneys' nonsuit motion was granted. (*Id.* at p. 963.)

Attorneys filed the third action for malicious prosecution against Client, the Stroud attorneys, and others. (*Zamos, supra*, 32 Cal.4th at p. 963.) The defendants' anti-SLAPP motions were granted; as to the Stroud attorneys' motion, the trial court held that they had probable cause to initiate the fraud suit. (*Id.* at pp. 963–964.) The Court of Appeal reversed the dismissal as to the Stroud attorneys. It concluded that Attorneys had made a showing sufficient to defeat the anti-SLAPP motion, based on evidence that the Stroud attorneys had continued to prosecute the case after learning that it was meritless; Attorneys had thus shown an absence of probable cause. (*Id.* at p. 964.)

 The Supreme Court affirmed the decision of the Court of Appeal. (*Zamos, supra*, 32 Cal.4th at p. 964.) After noting that in previous decisions it

had "characterized one of the elements of the tort of malicious prosecution as *commencing, bringing, or initiating* an action without probable cause" (*id.* at p. 965), the high court concluded that "[c]onfining the tort of malicious prosecution to the *initiation* of a suit without probable cause would be . . . without support in authority or in principle" (*id.* at p. 966). It held that "[c]ontinuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset. [Citation.]" (*Id.* at p. 969.) Accordingly, the court held that "an attorney may be held liable for malicious prosecution for continuing to prosecute a lawsuit discovered to lack probable cause." (*Id.* at p. 970.)

## 2. *Discussion*

Relying on the holding in *Zamos, supra*, 32 Cal.4th 958, Paiva argues at some length that appellants lacked probable cause to continue the prosecution of the prior case. At the hearing on the anti-SLAPP motions to strike, Paiva's counsel identified three matters—two factual and one legal—that he claimed "represented a change in the law and evidence . . . after the hearing on the preliminary injunction": (1) a 1992 recorded development agreement signed by Nichols; (2) a 1993 survey commissioned by Nichols; and (3) the decision of the First District Court of Appeal in *Bello v. ABA Energy Corp.* (2004) 121 Cal.App.4th 301 [16 Cal.Rptr.3d 818] (*Bello*). We conclude that Paiva's contention is without merit.

### a. *applicability of* Zamos *to Nichols and McSweeney*

Based upon the recital of the facts above, it is plain that *Zamos, supra*, 32 Cal.4th 958, involved very different circumstances than those presented here. There, the Stroud attorneys, after filing the underlying fraud suit, were presented with "smoking gun" evidence that their Client's claims against her former counsel were not objectively tenable—i.e., three court transcripts that included Client's sworn testimony that flatly contradicted her claim of fraud by her former counsel. (*Id.* at pp. 961–962.) Also in *Zamos*, the Stroud attorneys were given clear signals by the court prior to trial that Client's fraud claim was without merit: In pretrial proceedings, the trial judge admonished the Stroud attorneys repeatedly, after reading the court transcripts from the previous foreclosure case, that they should advise their client "of her Fifth Amendment rights, and that he would notify the district attorney's office if [her] testimony at trial contradicted those transcripts because such testimony would be perjurious." (*Id.* at p. 962.) Here, subsequent to the issuance of the preliminary injunction in the prior case, there (1) was no such evidence discovered that plainly contradicted the claims of McSweeney and Nichols, and (2) was no indication from the court before the tentative decision was filed that the claims were without merit.

Furthermore, the extent to which the legal principle of *Zamos* is applicable to the client-litigants, McSweeney and Nichols, is less than clear. Paiva contends that *Zamos, supra*, 32 Cal.4th at page 960, held that "an attorney *or litigant* has a continuing duty to maintain only a meritorious lawsuit and 'may be held liable for continuing to prosecute a lawsuit discovered to lack probable [cause].' " (Italics added.) In so arguing, Paiva attempts to mislead this court; *Zamos* only held that attorneys may be liable for malicious prosecution if they continue to maintain a suit that they learn after its filing to be meritless.[11] The case said nothing about such malicious prosecution liability for party-litigants. And the Supreme Court in its opinion focused repeatedly on the role of attorneys in prosecuting their clients' cases. (*Zamos, supra*, 32 Cal.4th at pp. 969–970; see also *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 297 [46 Cal.Rptr.3d 638, 139 P.3d 30] [holding that under *Zamos*, "the maintenance of an appeal by plaintiffs in an action discovered to lack probable cause may expose the plaintiff[s'] attorney to liability for malicious prosecution"].)

No published California case of which this court is aware has squarely addressed the issue of the extent to which, under *Zamos*, a nonattorney party may be liable for malicious prosecution based upon the continued prosecution of a suit that was initiated with probable cause.[12] On the one hand, we observe that the roles of attorney and client in litigation are very different. In light of the attorney's expertise and the client's reliance thereon, we can

---

[11] The entire quote from the sentence in *Zamos* that Paiva improperly excerpted in his brief reads: "We conclude *an attorney* may be held liable for continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos, supra*, 32 Cal.4th at p. 960, italics added; see also *id.* at p. 970 ["we conclude an attorney may be held liable for malicious prosecution for continuing to prosecute a lawsuit discovered to lack probable cause"].) Counsel would be well advised to not misquote cases to this or any other court in the future. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 417 [41 Cal.Rptr.3d 453] [attorneys "should never misrepresent the holding of an appellate decision"]; *Biancalana v. Fleming* (1996) 45 Cal.App.4th 698, 701–702, fn. 2 [53 Cal.Rptr.2d 47] [misquoting cases or statutes " 'is inexcusable upon the part of any lawyer, and places additional burdens upon this court' "].)

[12] In *Marijanovic v. Gray, York & Duffy* (2006) 137 Cal.App.4th 1262, 1271 [40 Cal.Rptr.3d 867], the court, citing *Zamos*, considered whether a general contractor's attorney and the general contractor had probable cause to initiate and maintain an underlying suit (cross-complaint for indemnity in construction defect action) against a painting subcontractor. The court concluded that neither the party nor its attorney had been presented with evidence demonstrating that the painter had no liability; accordingly, the court found that there was probable cause for initiating and maintaining the cross-complaint. (*Id.* at pp. 1271–1272.) The *Marijanovic* court did not discuss the potential circumstances under which a nonattorney party may be liable under *Zamos* for malicious prosecution where the party files suit with probable cause but later learns that the action is meritless. The only other reported California case that touches on the issue at all is *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 520 [37 Cal.Rptr.3d 381], where the court, in dictum and without elaboration, noted that under *Zamos*, "continued prosecution of a claim after it becomes apparent the claim is meritless can expose a party to damages for malicious prosecution . . . ."

envision numerous scenarios in which only the attorney may become chargeable with knowledge (postfiling) of new or different facts or law that render objectively untenable a lawsuit that was filed with probable cause. (See *Estate of Tucker ex rel. Tucker v. Interscope* (9th Cir. 2008) 515 F.3d 1019, 1032, fn. 13 ["[T]he holding in *Zamos* did not concern the post-filing conduct of the parties. Rather, *Zamos* held that an attorney who continues to prosecute a suit that he knows is without basis is liable for malicious prosecution where 'any reasonable attorney would agree [that the case is] totally and completely without merit' as a matter of law. [(*Zamos, supra*, 32 Cal.4th at p. 970.)] This holding is narrow. Weighing the effect of newly acquired evidence on the continued prosecution of a lawsuit is a matter peculiarly within the knowledge and competence of an attorney."].) On the other hand, we note that in reaching its conclusion, the Supreme Court in *Zamos* relied in part on section 674 of the Restatement Second of Torts, which provides that " '[o]ne who takes an active part in the initiation, *continuation* or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings . . . .' " (*Zamos, supra*, at p. 967, fn. 6.) The court also relied on Corpus Jurus Secundum, which defined the tort as " '[t]he commencement *or continuation* of the original proceeding by defendant against plaintiff . . . .' " (*Zamos, supra*, at p. 967, fn. 7, citing 54 C.J.S. (1988) Malicious Prosecution or Wrongful Litigation, § 17, p. 537.) Accordingly, we believe that, extending the reasoning of *Zamos*, there are circumstances under which a nonattorney client who has probable cause to file suit may be chargeable with the subsequent knowledge of facts—and thereby be potentially liable for malicious prosecution—that result in the case being not objectively tenable.

Therefore, notwithstanding the factual dissimilarities between *Zamos* and the case before us, and the uncertainty of the extent to which the principle enunciated in *Zamos* applies to nonattorney clients as well as attorneys, we address below the merits of Paiva's claim that appellants' continued prosecution of the prior suit after issuance of the preliminary injunction was tortious because they learned of new facts and law that rendered the claims not objectively tenable.

b. *development agreement*

The development agreement signed by Nichols and his wife in 1992 and recorded on February 27, 1992, provided for a deferment of the construction of identified permanent improvements affecting Nichols's property, including curbs and gutters, sidewalks, storm drainage, and underground conduit. Paiva claimed at the hearing on the motions to strike that the discovery of this agreement was a "change in the law and evidence occurr[ing] after the hearing on the preliminary injunction" and that it demonstrated that "Nichols acknowledged [the existence of] a public right of way encumbering the 20

feet of their property abutting the public right of way . . . [and] the right of the county to compel placement of improvements in the 20 foot easement area including underground conduit with wiring."

The development agreement was attached as an exhibit to Paiva's opposition to preliminary injunction. Indeed, Paiva now acknowledges in his brief that the development agreement was before the court in the prior suit at the time it considered the application for preliminary injunction. Therefore, while we doubt that the development agreement had the significance to the merits of the prior suit that Paiva claimed,[13] it was certainly not a new fact discovered after the granting of the preliminary injunction that would warrant application of the holding in *Zamos, supra*, 32 Cal.4th 958.

### c. *1993 survey commissioned by Nichols*

Paiva's counsel also argued at the hearing on the motions to strike that a survey commissioned by Nichols that was recorded in June 1993 (Nichols survey) was discovered after the preliminary injunction hearing and was "significant . . . because . . . it show[ed] the Nichols property, . . . the public right of way, the easement encumbering the property in the 20 feet that abuts the right of way." However, despite the claimed significance of the Nichols survey, Paiva did not even refer to it either in his lengthy (29-page) memorandum in opposition to the motions to strike—which contained extensive argument that under *Zamos*, appellants continued to prosecute the prior suit after learning that it was meritless—or in his lengthy (20-page) declaration in opposition to the motions to strike. We disagree that this Nichols survey constituted a new fact from which appellants should have concluded that the prior suit was meritless.

First, although the Nichols survey was apparently not part of the record before the court when it issued the preliminary injunction in the prior suit, a survey from April 2004 commissioned by Paiva—a survey which Paiva concedes contained information similar to that found in the Nichols survey—*was* included in his opposition to preliminary injunction. Paiva does not adequately explain how the earlier survey was a new fact rendering the prior suit meritless, particularly since the court had the similar Paiva survey available to it when it issued the preliminary injunction.

Second, Paiva fails to address the question of why, given the supposed significance of the Nichols survey that was a matter of record at the time of

[13] The recordation of the development agreement in 1992 notwithstanding, the Santa Clara County Counsel, in a detailed letter written over seven years later, opined that the prior purported dedication of all of the Topar Road area to the county was ineffective, and expressed significant doubt as to the status of the county's property rights to excavate subsurface area adjacent to the road based on an implied-in-law dedication.

the filing of the prior suit, he did not include it in his opposition to the preliminary injunction application.

Third, it is difficult to see how the 1993 Nichols survey constituted a new fact that essentially *transformed* the prior suit from one appellants had probable cause to initiate into one that was objectively without merit. At the time the prior suit was filed, there appeared to be a substantial controversy as to whether Paiva had the legal right to place his utilities underground by connecting the buried lines with a power pole located on Nichols's property. In May 1999, in a lengthy memorandum, the County Counsel addressed, among other issues, "whether the County could grant a permit to homeowner Michael Paiva to excavate Topar Avenue laterally to reach his neighbor's property to underground his electrical utilities." The County Counsel, tracing the history of recorded deeds and other documents in the affected area, concluded that a right of way along Topar Avenue purportedly granted in 1948 was ineffective at least as to McSweeney's property, because the grantor (Peninsula Properties Corporation) did not hold title to the McSweeney property at the time of the purported dedication. The memorandum noted that in 1977, PG&E began work in the area to place utilities underground. It was met with resistance by McSweeney, and based upon his assertion that the 1948 dedication was ineffective and his threat of a lawsuit, PG&E abandoned the excavation project. The memorandum noted further that Paiva, although he had above-ground electrical service, had "demanded that the County issue an encroachment permit to dig up Topar Avenue so that PG&E may install underground electrical service to him . . . . The County has declined to issue an encroachment permit based on the uncertainty of the County's ownership of the subsurface area of the road, the previous history with PG&E which abandoned the project, and the possibility of potential [*sic*] litigation by neighbor McSweeney."

County Counsel, after concluding that there had been no implied-in-fact dedication of Topar Road (due to the ineffective dedication in 1948), found that there had been an implied-in-law (or prescriptive) dedication of the road. The May 1999 memorandum went on to state, however, that although the county's authority to maintain and trench the road itself was unquestionable, its right to dig into the subsurface area of land adjacent to the road owned by third parties was "less clear." County Counsel concluded that the county could not issue a private encroachment permit to Paiva, but it could issue a permit to PG&E, "*provided* PG&E indemnifie[d] the County for any third party claims arising from [that] issuance."

In two letters to Paiva later in 1999, PG&E also expressed doubts about the legality of placing his utilities underground by accessing property adjacent to Topar Road without private landowners' consent. In August, PG&E noted

that because of "conflicting information regarding the dedication of Topar Avenue and . . . [ambiguity as to whether] the portion of the road which includes the existing utility pole is a public road or private road[,] . . . it does not appear that PG&E has sufficient rights to proceed with the proposed underground service line. Therefore, PG&E cannot proceed until [it has] definitive information or a legal ruling regarding the disposition of this road." In November, after acknowledging receipt and review of documents provided by Paiva, PG&E noted that "[t]he information that you have provided does not resolve the issue of Topar Avenue ownership. The argument still exists that Peninsula Properties did not have sufficient title to grant to Santa Clara County that portion of the properties belonging to McSweeney and Nichols." The letter concluded with a renewed request by PG&E that Paiva obtain "a legal ruling regarding the disposition of this road . . . ."

Based upon, inter alia, the County Counsel's memorandum, the two PG&E letters, and Paiva's failure to obtain a definitive legal ruling as requested by PG&E in 1999, the court in the prior suit issued a TRO and a preliminary injunction to preserve the status quo and to prevent the placement of Paiva's utilities underground when the proposed project was revived some five years later. The absence of the Nichols survey from the court's consideration of the preliminary injunction application does not suggest that the court would have reached a different conclusion had that 1993 survey been available. We therefore reject Paiva's assertion that the Nichols survey constituted a new fact from which it may be concluded that appellants did not have probable cause to continue to prosecute the prior suit after the granting of the preliminary injunction.

### d. *decision in* Bello

The First District Court of Appeal decided *Bello, supra,* 121 Cal.App.4th 301, approximately three months after the court in the prior suit granted the application for preliminary injunction. In *Bello,* at page 305, certain agricultural landowners brought a trespass action against a private energy company that operated a natural gas field and had installed without the plaintiffs' permission an underground pipeline that passed over a right-of-way located on their land. Before proceeding with the project, the energy company— without seeking or obtaining the plaintiffs' consent for installing the underground pipe—applied for and obtained a right-of-way encroachment permit from Solano County. (*Id.* at p. 306.)

The appellate court reversed the trial court's judgment for the plaintiffs. (*Bello, supra,* 121 Cal.App.4th at p. 306.) It held that the energy company had not needed the plaintiffs' permission before installing the pipeline in the right-of-way located on their land. (*Id.* at pp. 307–308.) Further, the *Bello*

court noted that while case law has "not established uniform criteria for evaluating the propriety of a permitted use of a public right-of-way, . . . a proposed use . . . should: (1) serve as a means, or be incident to a means, for the transport or transmission of people, commodities, waste products or information, or serve public safety [citations]; (2) serve either the public interest or a private interest of the underlying landowner that does not interfere with the public's use rights [citation]; and (3) not unduly endanger or interfere with use of the abutting property. [Citation.]" (*Id.* at pp. 315–316.) And after identifying the standard of review of governmental issuance of a permit for use of a right-of-way as one of abuse of discretion (*id.* at p. 316), the court found that Solano County had not abused its discretion by issuing the encroachment permit to the energy company. (*Id.* at pp. 316–317.)

We conclude for several reasons that Paiva's contention that *Bello* represented "a change in the law" from which appellants should have readily determined that the prior suit was meritless is itself a claim without merit.[14] Our holding is based upon the fact that *Bello* did not represent a change in the law at all. It was not, for instance, a case announcing a rule of law in a matter of first impression. Nor did it represent a clear change in the law, such as a Supreme Court decision overruling prior appellate decisions or stating a new rule of law. (See, e.g., *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] [abolishing private third party actions for insurer violations of Unfair Insurance Practices Act, thereby overruling *Royal Golbe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329]].) Rather, in *Bello*, the court sought o reconcile "two distinct lines of authority in the Supreme Court's right-of-way jurisprudence" (*Bello, supra,* 121 Cal.App.4th at p. 307)— namely, one regarded as having a more "expansive approach" (*ibid.*) found in *Montgomery v. Railway Company* (1894) 104 Cal. 186 [37 P. 786] and *Colegrove W. Co. v. City of Hollywood* (1907) 151 Cal. 425 [90 P. 1053], and a more restrictive approach as found in *Gurnsey v. Northern Cal. Power Co.* (1911) 160 Cal. 699 [117 P. 906].

In addition, *Bello* involved a factual background entirely distinct from the prior suit in several respects. In *Bello*, the parties stipulated before trial "that the county 'has a right of way' on the Bellos' property and 'maintained and controlled' a road within that right-of-way." (*Bello, supra,* 121 Cal.App.4th at p. 317.) In contrast, in the prior suit here, there was no similar stipulation to the existence of a right-of-way over the McSweeney and/or Nichols property. This is underscored by the fact that the court, in granting the preliminary injunction application, determined that there was only an easement by

---

[14] Indeed, in his written opposition to the motions to strike, Paiva acknowledged that *Bello* did not "announce[] any new or revolutionary principles of law . . . ."

prescription over the 40-foot width of Topar Avenue and that such easement was "limited to surface use and [did] not permit underground excavation." The contrast between the two cases is demonstrated further by the fact that at the trial of the prior suit, appellants continued to maintain that there was no easement by express grant because the 1948 purported dedication by Peninsula Properties Corporation was defective, and that the easement by prescription that the County acquired in Topar Avenue as a public road was limited to its actual use and did not include the proposed use of undergrounding utilities. In addition, in *Bello*, the court was addressing an underground pipe that without question afforded a public benefit of transporting natural gas to a metering station operated by PG&E for eventual use by a number of consumers. (*Id.* at p. 306.) In contrast, in the prior suit, appellants took the position—which was at least an arguable one—that "[t]he work proposed by Defendant Paiva does not fit [the three above mentioned *Bello*] criteria; it is for his private interest, interfering with the use of the underlying landowner."

The decision of the First District Court of Appeal in *Bello* did not have the effect of rendering appellants potentially liable for malicious prosecution for continuing to maintain the prior suit.[15]

### e. *other contentions of Paiva*

Paiva's brief contains significant discussion attacking the legal arguments presented by appellants in the prior suit through the time of trial. He asserts that their interpretations concerning the easements in question were unduly restrictive and unsupported by the law and facts. Paiva's argument appears to be separate and distinct from his contention that after the issuance of the preliminary injunction, appellants became aware of new facts and law (i.e., *Bello, supra*, 121 Cal.App.4th 301) that rendered their continued prosecution of the prior suit tortious. This argument fails for at least two reasons.

First, to the extent that Paiva argues that appellants' position in the prior suit was without legal or factual foundation, he ignores the legal effect of the issuance of the preliminary injunction. As we have discussed, *ante*, the granting of the application of Nichols and McSweeney for TRO and preliminary injunction established probable cause for the initiation of the prior suit. (*Fleishman, supra*, 102 Cal.App.4th 350.)

---

[15] On appeal, Nichols and McSweeney argue that they, as nonattorneys relying on the advice of their attorney, could not under any circumstances be liable for malicious prosecution for continuing to maintain a suit rendered meritless because of a change in the law. Because we conclude that there were no new facts or law of which appellants should have been aware after the granting of the preliminary injunction that would have made their continued prosecution of the prior suit actionable, we need not decide the issues of the applicability of advice-of-counsel defense or whether that defense was adequately shown by Nichols and McSweeney.

Second, Paiva's argument is replete with conclusory statements regarding what transpired in the prior suit, which have no evidentiary support and are not followed by proper citation to the record. (See Cal. Rules of Court, rule 8.204(a)(1)(C).) Such unsupported statements include the claims that (1) Paiva produced "during the course of discovery and the various hearings . . . deeds and documents establishing the chain of title for properties of Paiva, McSweeney and Nichols"; (2) "[t]he county, PG&E and others installed all manner of public utilities to provide service to the surrounding residences"; (3) "[a]t the trial . . . appellants conceded the existence of a prescriptive easement in favor of the public"; (4) "there was a complete absence of evidence [produced at trial] that [the McSweeney and Nichols] properties would be injured or threatened" by the proposed undergrounding of Paiva's utilities; (5) "[t]he utility upgrade proposed by PG&E would only *improve* service on the street"; (6) McSweeney and Nichols "abandoned their claims of damage" at trial; and (7) a representative of PG&E testified at the trial "that the existing electrical transformer was overloaded and that the work supported by Paiva was needed to upgrade equipment to meet current standards." To the extent that Paiva's contention that appellants lacked probable cause to continue to prosecute the prior suit is based upon these assertions, his failure to cite the record in support of them precludes our consideration of them. (*In re S.C., supra*, 138 Cal.App.4th at p. 406 ["When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made"].)

### D. *Conclusion*

We conclude that Paiva has failed to make a prima facie showing of malicious prosecution. He has failed to demonstrate that appellants (1) lacked probable cause to initiate the prior suit, or (2) after initiating the prior suit with probable cause, thereafter "continu[ed] to prosecute [that] lawsuit discovered to lack probable cause." (*Zamos, supra*, 32 Cal.4th at p. 970.) Therefore, Paiva having failed to show a probability of prevailing on his malicious prosecution claim, the court erred in denying appellants' motions to strike the complaint.

A defendant who prevails on a motion to strike under section 425.16 is entitled to recover his or her reasonable attorney fees and costs. (§ 425.16, subd. (c).) Such an award of fees and costs is "mandatory." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735].) Accordingly, appellants shall be awarded their reasonable costs and attorney fees incurred in connection with their respective anti-SLAPP motions.

## DISPOSITION

The order denying the respective special motions to strike the complaint pursuant to the anti-SLAPP statute brought on behalf of appellants Nichols, McSweeney, and Fabian is reversed. The matter is remanded to the trial court to enter an order granting the motions to strike, and to conduct proceedings as appropriate to determine costs and reasonable attorney fees, including attorney fees on appeal, to be awarded to appellants. (See *City of Los Angeles v. Animal Defense League* (2006) 135 Cal.App.4th 606, 627–628 [37 Cal.Rptr.3d 632].)

Rushing, P. J., and McAdams, J., concurred.

A petition for a rehearing was denied December 18, 2008, and respondent's petition for review by the Supreme Court was denied February 18, 2009, S169526. George, C. J., did not participate therein.