Filed 5/19/21  Forde v. Friedland CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| STEPHEN FORDE et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>BRENT FRIEDLAND et al.,<br><br>Defendants and Respondents. | B299966<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV16540) |

APPEAL from orders of the Superior Court for Los Angeles County, Michael P. Vicencia, Judge.  Affirmed in part and reversed in part.

Henry J. Josefsberg for Plaintiffs and Appellants.

Delman Vukmanovic, Dana Delman and John Vukmanovic for Defendants and Respondents Randy Taylor, Reyna Taylor and Steve Hawrylack.

No appearance for Defendants and Respondents Brent Friedland; Seaside Real Estate Services; Todd Wohl; Braun International Real Estate; Ray Craemer; Julia Craemer; 628 W. Imperial LP; Jinyu Jia; Hao Xu; Kelvin Tran; and Trang Do.

Plaintiff Stephen Forde appeals from the trial court's orders granting a special motion to strike under Code of Civil Procedure[1] section 425.16 (the so-called anti-SLAPP statute) and motions for sanctions under sections 128.5 and 128.7 filed by defendants Randy Taylor, Reyna Taylor, and Steve Hawrylack. In those orders, the trial court struck the entire complaint against all defendants, awarded the Taylors and Hawrylack attorney fees for their special motion to strike, and imposed monetary sanctions against Forde and his trial attorney, Jason Ahdoot. Ahdoot also appeals from the order imposing monetary sanctions. We conclude the trial court did not err in granting the special motion to strike the cause of action for quiet title and awarding attorney fees with respect to that motion, and we affirm the judgment with respect to those orders. However, we conclude the order granting the sanctions motions—in which the court struck the entire complaint and imposed monetary sanctions—must be reversed. We reach this conclusion with reluctance because the record demonstrates that sanctions were warranted. Nevertheless, the safe harbor provisions of the sanction statutes were not followed, and therefore the order granting the sanctions motions cannot stand.

---

[1]    Further undesignated statutory references are to the Code of Civil Procedure.

## BACKGROUND

This case is the latest in a series of lawsuits and appellate proceedings[2] involving disputes over four pieces of real property owned by the Taylors, Hawrylack, and Forde. We need not set forth in great detail the long history of the disputes. That history can be found in some of the other appellate decisions involving the properties and the parties to this appeal. (See *Forde v. Craemer, et al.* (Jan. 27, 2021, B298185) [nonpub. opn.]; *Taylor, et al. v. Forde* (Jan. 20, 2021, B298957) [nonpub. opn.]; *Forde v. HSBC Bank USA, N.A., et al.* (Nov. 20, 2019, B291582) [nonpub. opn.]; *Taylor, et al. v. Unruh* (Nov. 6, 2018, B280376) [nonpub. opn.].) Our summary of the pertinent facts and procedural history is based upon those decisions, the records in those appeals, and the record in this appeal.

A.     *Purchase of the Properties*

In the mid-2000s, the Taylors and Hawrylack purchased four income properties, two in Torrance (which the parties refer to as Maple 1 and Maple 2) and two in Glendale (which are not at issue in this appeal). For reasons that are not relevant here, the attorney who represented the Taylors and Hawrylack in the purchase and financing of the properties, Carol Unruh (who now is deceased), acquired an interest in each property.

---

[2]     The caption pages on pleadings filed in this case list 11 related cases in the trial court. Our search of appellate records show there have been 14 appeals or writ petitions filed in the related cases, most of which were dismissed or denied; only one of those proceedings resulted in a reversal.

3

Forde, who had worked with Unruh in assisting the Taylors and Hawrylack with the initial financing and subsequent renegotiation of the interest rates on that financing, acquired Unruh's interests in the properties in 2011. That same year, Forde filed a lawsuit against the Taylors and Hawrylack, alleging they had mismanaged all four properties (hereafter, the first lawsuit). The trial court in that case appointed Forde as manager of the properties. In September 2012, the parties entered into a settlement agreement, which provided that Forde would continue to manage the properties.

B.    *The Taylors and Hawrylack File a Partition Action*

In October 2015, the Taylors and Hawrylack filed a lawsuit against Forde for partition of Maple 1 and 2, an accounting, breach of contract, waste, and conversion (we will refer to that action as the partition action). They alleged that Forde committed various acts of misconduct in managing the properties, including retaining rental income for his personal use, not paying the mortgages, and not properly maintaining the properties. They sought to have the properties sold and to recover from Forde their share of the rents they alleged he improperly retained. The following month, the trial court granted the Taylors' and Hawrylack's application to appoint a receiver to manage and control Maple 2; the court appointed Kevin Singer.

Things did not go smoothly, as Forde attempted to interfere with Singer's management of Maple 2. Finally, at the request of the Taylors and Hawrylack, in May 2018 the trial court in the partition action entered an interlocutory judgment of partition, which decreed that the

4

Taylors, Hawrylack, and Forde were the owners of Maple 1 and Maple 2, appointed Singer referee with full authority to manage both Maple 1 and Maple 2, and granted authority to and directed Singer to sell both properties.[3] Forde appealed the interlocutory judgment and posted a $500,000 bond to obtain a stay of enforcement (after several proceedings in the trial and appellate courts regarding the amount of the bond).

During the period before Forde posted the bond (i.e., before the interlocutory judgment was stayed), Singer entered into a contract for the sale of Maple 2, and the trial court set a court confirmation and overbid hearing for the sale. The real estate broker hired by the referee also found buyers for Maple 1. In late October 2018, before the confirmation and overbid hearing was held (and after Forde posted the $500,000 bond, staying the interlocutory judgment), the referee asked the trial court to increase the amount of the bond to cover the waste resulting from real estate commissions that might need to be paid to the listing broker, as well as reimbursable costs that would be claimed by the buyers of the properties, if the sales did not go forward due to delay caused by Forde's appeal (if the appeal was unsuccessful or dismissed).

---

[3] The interlocutory judgment also, among other things, (1) directed Singer to have each property appraised by a licensed appraiser; (2) directed him to submit a report to the court recommending the proposed method of sale of each property (to which the parties could file objections); (3) authorized him to retain any marketing analysis or advertisers he required to assist him in selling the properties; (4) directed him to set an initial listing price for each property based upon his evaluation of the market data; and (5) authorized him to reduce the asking prices "as he determines is advisable in order to generate interest in the properties."

5

On October 30, 2018, the trial court granted the referee's request and ordered Forde to post a supplemental bond in the amount of $180,000. Forde did not post the bond by the November 5, 2018 deadline set by the court, and on November 7, 2018, the trial court lifted the stay on the sale of the properties. The court set the confirmation and overbid hearing for the sale of both Maple 1 and Maple 2 for November 20, 2018.

C.    *Forde Files the Craemer Lawsuit*

On November 19, 2018—two weeks after the stay was lifted, and the day before the scheduled confirmation and overbid hearing—Forde filed a lawsuit against the Taylors, Hawrylack, referee Singer, and the intended buyers of Maple 1 and Maple 2 (Ray Craemer, Julia Craemer, 628 W. Imperial LP, Hao Xu, and Jinyu Jia), alleging claims for declaratory relief and quiet title. We refer to this lawsuit as the *Craemer* action.[4] That same day, Forde recorded notices of pendency of action (lis pendens) on Maple 1 and Maple 2.

The complaint in the *Craemer* action set forth a lengthy history of the relationship and litigation between Forde and the Taylors and Hawrylack (at least as perceived by Forde), and alleged two causes of action against all of the defendants: for declaratory relief and for quiet title.

---

[4]    The *Craemer* action was deemed related to the partition action, and therefore was assigned to the same judge as the partition action.

The declaratory relief cause of action set forth the history of the setting of the bond and the subsequent increase of the bond amount. It alleged there was no basis for the increase because Singer's representations that commissions would be owed under the listing agreements if the sales of the properties did not close was false. It asked for a judicial determination that no commissions would be owed, and for cancellation of the supplemental bond requirement.

The cause of action for quiet title consisted of three paragraphs that were devoid of specific factual allegations and did not incorporate by reference any other allegations in the complaint. Forde alleged only that all of the defendants claimed an interest in Maple 1 and Maple 2 that is adverse to Forde's interest, that the defendants have no such interest, and that Forde was seeking to quiet title to the properties against the defendants' claimed interest.

The Taylors and Hawrylack filed a special motion to strike the *Craemer* complaint under section 425.16. On May 6, 2019, the trial court entered an order granting the motion, finding the causes of action arose from protected activity and that Forde failed to demonstrate a probability of success on the merits (he relied entirely upon his verified complaint). The court ordered the complaint stricken in its entirety.[5] That same day, the court entered orders expunging the lis pendens Forde had recorded on Maple 1 and Maple 2. Also on that same day,

---

[5] Forde appealed from the order granting the special motion to strike, and on January 27, 2021, Division Seven of this Appellate District affirmed the order.

7

referee Singer gave notice that he would be appearing ex parte in the partition action on May 8, 2019 to request that the trial court order a confirmation and overbid hearing for the sale of Maple 2; apparently, however, the ex parte hearing did not occur on May 8.

D.    *Forde Files the Present Lawsuit*

On May 13, 2019—a week after the trial court in *Craemer* entered the orders granting the Taylors' and Hawrylack's special motion to strike and expunging the lis pendens—Forde filed the complaint in the present case.[6]  Forde also filed new lis pendens on both Maple 1 and Maple 2 that same day.

Despite being represented by a different attorney than the attorney who represented him in the *Craemer* action, the complaint in the present case is mostly a verbatim copy of the complaint in the *Craemer* action, with the exception of the addition of six new defendants and five new causes of action, and the deletion of Singer as a defendant. Two of the new defendants—Brent Friedland and Seaside Real Estate Services—were hired by referee Singer to conduct appraisals of the Maple properties.  Two others—Todd Wohl, and Braun International Real Estate—were hired by Singer as the listing broker for the properties.  (We will refer to these four defendants collectively as the real estate professionals.)  The remaining new defendants are Kelvin

---

[6]    Like the *Craemer* action, the present lawsuit was deemed related to the partition action and therefore was assigned to the same judge as the *Craemer* and partition actions.

8

Tran and Trang Do; the complaint does not allege what their relationship is to the conduct alleged in the complaint, although documents in the record indicate that they were the new prospective buyers of Maple 2.

The complaint alleges seven causes of action. Two of those causes—for declaratory relief and quiet title—are virtually identical to the causes of action alleged in the *Craemer* complaint; the language of the quiet title claim in both complaints actually is identical (except for a reference to a date), and although the declaratory relief cause of action in the present case sets forth the controversy somewhat differently than the same cause of action in the *Craemer* complaint, it raises the identical issue. Two of the new causes of action—for cancellation of sale of real property and termination of receivership—are simply extensions of the declaratory relief action alleged both in the present complaint and the *Craemer* complaint. The remaining three causes of action—for negligence, fraud, and intentional interference with prospective economic advantage—are alleged only against the real estate professionals; Forde alleges they acted improperly in appraising and marketing the Maple properties.

E.    *Ex Parte Applications*

Within a month after Forde filed the complaint, four ex parte applications were made that are relevant to this appeal.

9

1.   *Singer's Application to Set Confirmation and Overbid Hearing*

On May 20, 2019, referee Singer brought an ex parte application in the partition action asking the trial court to, among other things: (1) set a confirmation and overbid hearing for the sale of Maple 2; (2) expunge the lis pendens recorded against Maple 1 and Maple 2 with regard to the present lawsuit; (3) order Forde, his legal counsel, or anyone acting in concert with him not to file any lien and/or encumbrance on the title to Maple 2 without first obtaining leave of the court; and (4) order that any future liens and/or lis pendens filed or recorded by Forde, his legal counsel, or anyone acting in concert with him, without first obtaining leave of the court, be deemed void and expunged.  The trial court granted Singer's application and set the confirmation and overbid hearing for June 6, 2019.[7]

2.   *Forde's Application to Set Aside the May 20, 2019 Order*

On May 31, 2019, Forde filed an ex parte application *in the present lawsuit* asking the trial court to set aside the May 20, 2019 order granting Singer's ex parte application *in the partition action*.  Forde argued that the May 20 order should not have been granted because there were issues with the appraisals that Singer used to establish the

---

[7]   The minute order granting Singer's ex parte application simply says that the application is granted, without specifying the actual orders Singer requested the court make, and sets the date for the confirmation and overbid hearing.  Although Singer filed and served a notice of ruling stating that the court issued the requested orders, and listing each order, it appears that no written orders were entered specifying what was ordered.

listing prices for the Maple properties, and the properties were not properly marketed—essentially the same arguments that form the basis for Forde's claims against the real estate professionals in the present case. Forde also argued that he was denied due process because he was not able to present any argument at the May 20 hearing on Singer's ex parte application because his counsel in the present action was not allowed to appear (his counsel in the partition action was out of the country on May 20).[8] In support of his first argument, Forde attached declarations from appraiser John Lee, who challenged the appraisals that had been prepared by the appraiser hired by Singer, and from real estate broker Clara I. Duran Reed, who discussed what she believed were significant issues with the marketing of Maple 1 and Maple 2.

The trial court denied Forde's application because he failed to identify the written order he was seeking to set aside.

3. *Singer's Application to Continue the Closing Date*

On or before June 12, 2019, Singer filed another ex parte application in the partition action to continue the closing date on the

---

[8] According to Ahdoot, who was Forde's trial counsel in the present action, he tried to appear at the May 20 hearing, but was told by the clerk that he could not do so unless he filed a substitution of attorney in the partition action. (Henry J. Josefsberg, who represents Forde and Ahdoot in this appeal, was Forde's counsel of record in the partition action.) Ahdoot argued he was not required to substitute in because he was Forde's attorney of record in the present action.

11

sale of Maple 1.[9]  Singer explained that the court confirmed the sale on November 27, 2018, but the buyers did not want to close the sale at that time because they had just been sued by Forde (in the *Craemer* action) and they wanted to wait until that case was dismissed.  Singer noted that although the *Craemer* action was dismissed, Forde sued the buyers again (in the present action).  Therefore, Singer asked the court to extend the closing date for 45 days, with the hope that the new lawsuit would be dismissed by then.  Singer also noted that Forde again recorded lis pendens on the property without permission of the court, which Singer argued was not allowed under the law for receivership estates and real properties.

The trial court granted Singer's application, and issued an order to show cause why the lis pendens should not be expunged and why sanctions should not be imposed against Forde and his attorney, Adhoot, for recording the lis pendens without the court's permission.[10]

---

[9]    Singer's application is not part of the record in this appeal; our discussion of it is based upon the reporter's transcript of the hearing on the application, held on June 12, 2019, which is part of the record in this appeal because that hearing was held in the same session as the hearing on the Taylors' and Hawrylack's ex parte application to shorten time discussed below.

[10]    The court issued a second order to show cause with regard to the lis pendens recorded against Maple 2 when it addressed the scheduled confirmation and overbid hearing for the sale of Maple 2, which was heard following Singer's ex parte.

4. *The Taylors' and Hawrylack's Application to Shorten Time*

On June 11, 2019, the Taylors and Hawrylack filed an ex parte application in the present action (to be heard the following day) to (1) specially set or shorten time for a special motion to strike; (2) specially set or shorten time for a sanctions motion; (3) stay or abate the present action; and (4) extend the time for the real estate professionals to respond to the complaint. They explained that the requested orders were needed to prevent further delay in the sales of Maple 1 and Maple 2.

In connection with their application, the Taylors and Hawrylack submitted a proposed order in which they left blanks for the court to fill in regarding filing and briefing deadlines. With regard to the sanctions motion, their proposed order included the following language: "(b) To account for the mandatory safe-harbor period, the hearing on the Sanctions Motion shall take place on _____, 2019. [¶] (c) Defendants' Sanctions Motion shall be filed and served electronically no later than _____, 2019."

Despite this language in the proposed order, there was no discussion regarding the safe harbor period for the sanctions motion at the hearing on the ex parte application. Instead, counsel for the Taylors and Hawrylack simply stated that he wanted to specially set hearings on the special motion to strike and the sanctions motion he intended to file. The court asked when counsel would be able to serve the motions, and counsel responded he could do so on June 18. The court then set the hearing on the motions for July 15, 2019, the same date as the hearing in the partition action on the court's order to show cause why

13

the lis pendens should not be expunged and sanctions imposed against Forde and his counsel.

The court did not sign the proposed order submitted by the Taylors and Hawrylack. Instead, it entered a minute order stating that the ex parte application was granted, setting a hearing date for the special motion to strike and motion for sanctions, extending the time for the real estate professionals to respond to the complaint, and staying the case pending its rulings on the motions set to be heard on July 16, 2019.

At 4:39 p.m. on June 17, 2019—the day before the Taylors and Hawrylack were scheduled to file their special motion to strike and sanction motion—Forde filed a request for dismissal, without prejudice, of the declaratory relief, cancellation of sale of real property, and termination of receivership causes of action. The clerk entered the dismissal on June 18, 2019, leaving only a single cause of action (quiet title) alleged against the Taylors and Hawrylack.

F. *Special Motion to Strike and Sanctions Motions*

On June 18, 2019, the Taylors and Hawrylack filed and served their special motion to strike under section 425.16 and two motions for sanctions, one under section 128.5 and the other under section 128.7. They also filed a combined request for judicial notice in support of all three motions in which they asked the trial court to take judicial notice of various documents filed in the partition action and in the *Craemer* action, as well as all papers filed with the court of appeal relating to the partition action.

1.  *Special Motion to Strike*

The special motion to strike addressed only the four causes of action that were alleged against the Taylors and Hawrylack; it did not specifically mention the three causes of action alleged against the real estate professionals (although it did ask the court to strike "the complaint").  The Taylors and Hawrylack argued that the declaratory relief and quiet title causes of action were identical to those alleged in the *Craemer* lawsuit, which the trial court had found arose from the Taylors' and Hawrylack's exercise of their right of petition and/or free speech.  They also argued that the cancellation of sale and termination of receivership claims similarly arose from their exercise of those rights because the claims arose from their requests for orders in the partition action.  They asserted that Forde could not establish a probability of prevailing because, among other reasons, the causes of action are improper attempts to collaterally attack orders made by the trial court in the partition action.  Finally, the Taylors and Hawrylack argued they were entitled to $8,734.25 in attorney fees under section 425.16, subdivision (c) if they prevailed on their motion.

In his opposition to the motion to strike, Forde did not specifically address the claims alleged against the Taylors and Hawrylack (other than to note that he filed a request for dismissal of all but the quiet title cause of action), and instead focused on his "new" allegations regarding the real estate professionals.  He argued that although the complaint "refers to the acts of parties coincidentally involved in litigation, the mere backdrop of litigation does not automatically afford anti-SLAPP protection."  In any event, Forde argued, there was a reasonable

15

probability he would prevail, and pointed to the supporting declarations he filed from John Lee (regarding the appraisals of the Maple properties) and Clara Duran Reed (regarding the marketing of the properties). Forde also argued that the statutory exception of section 425.17 applied because his complaint involved false representations by the real estate professionals, and therefore section 425.16 did not apply. Finally, Forde challenged the amount of fees sought in the motion, arguing they were unreasonable.

2.      *Sanctions Motions*

In their sanctions motions, the Taylors and Hawrylack argued that the filing of the complaint in this action and the recording of lis pendens on Maple 1 and Maple 2 were done in bad faith for the improper purpose to harass, cause unnecessary delay, or needlessly increase the cost of litigation. The motion asked the court to expunge the lis pendens recorded against both Maple properties, strike or dismiss with prejudice the entire complaint, and impose a total of $16,178.35 in monetary sanctions against Forde and Ahdoot, jointly and severally.

Forde opposed the motions on the grounds that he was not provided a safe harbor period, as required by both section 128.5 and 128.7, and that, as shown by the declarations of John Lee, Clara Duran Reed, and Ahdoot, his causes of action were not frivolous or asserted in bad faith. In reply, the Taylors and Hawrylack argued, among other things, that sections 128.5 and 128.7 allow a court to dispense with the

16

safe harbor period, and that the court in this case did so when it granted their ex parte application to shorten time.

### 3. *Hearing on the Motions*

At the July 16, 2019 hearing on the special motion to strike and sanctions motions (at which the trial court also addressed the orders to show cause it issued in the partition action regarding expungement of the lis pendens and imposition of sanctions), the court first addressed the special motion to strike. When asked why the causes of action do not arise from petitioning activity, counsel for Forde conceded that the claims for declaratory relief, cancellation of sale, and termination of receivership might fall into that category, but noted that those claims were dismissed before any of the motions at issue were filed. Counsel argued that the quiet title cause of action did not arise from petitioning activity, however, because it is based "more precisely [on] the things they did to sell the property." The court rejected that argument, finding that Forde's claim is nothing more than an assertion that what the parties did in the partition action was improper; therefore the court found it arises from petitioning activity.

The court then found that Forde had no likelihood of prevailing on the merits because the court had already ordered the sale, and had considered and rejected Forde's arguments regarding the appraisals and marketing of the properties at the confirmation hearing in the partition action; the court noted that Forde's attorney in the partition action had submitted the same declarations from John Reed and Clara Duran Reed for the confirmation hearing on the sale of the properties.

17

Therefore, the court granted the special motion to strike and struck the quiet title cause of action as to the Taylors and Hawrylack; it also awarded them $8,734.24 in attorney fees.[11]  And, because the quiet title claim was stricken, the court ordered the lis pendens against Maple 1 and Maple 2 expunged.

Turning to the sanctions motions, the court addressed Forde's argument that the motions were improper because he was not given a safe harbor period.  The court noted that Forde was given notice that a motion would be filed seeking sanctions against him and his attorney for recording the lis pendens, and observed that Forde took advantage of that notice by dismissing some of the causes of action.  Therefore, the court concluded that the safe harbor requirement had been satisfied.

Turning to the merits, the court found there was no colorable argument for prevailing on the claims in the present action.  The court noted that all of the claims were, or should have been, raised in the pending partition action, and that the only reason for filing them in a new action was to allow Forde to record new lis pendens to disrupt the sales of the properties.  Therefore, the court granted the sanctions motions and imposed sanctions against Forde and Ahdoot, jointly and severally, in the amount of $16,178.35.  The court also ordered both lis

_____

[11]    The minute order refers to these attorney fees as sanctions imposed against Forde (probably because the caption on the special motion to strike referred to them as sanctions).  However, section 425.16, subdivision (c) *requires* the court to award attorney fees to defendants who prevail on a special motion to strike, without any other showing.  We will refer to them as attorney fees to distinguish this award from the sanctions that were imposed under sections 128.5 and 128.7.

pendens expunged as a sanction (in addition to ordering them expunged based upon the ruling on the special motion to strike) and ordered the entire complaint stricken pursuant to the section 128.7 motion. Finally, the court ordered Forde not to file any further lawsuits or record any further instruments with respect to Maple 1 and Maple 2 without first obtaining leave of court, stating that a violation of the order may result in contempt.

On August 1, 2019, two weeks after the hearing, the trial court signed a proposed order submitted by counsel for the Taylors and Hawrylack granting the special motion to strike. The order states: "The Court, having considered the moving papers, opposition and reply papers, and after oral argument, finds good cause and hereby orders as follows: [¶] (a) The Motion is granted; [¶] (b) The Complaint Filed by Plaintiff Stephen Forde is stricken in its entirety; [¶] (c) Sanctions in the amount of $8,734.25 are ordered imposed against Plaintiff Stephen Forde . . . ; and [¶] (d) Lis Pendens recorded against Maple 1 [and] Maple 2 . . . are expunged."[12] Forde timely filed a notice of appeal from "the Order disposing of this matter" as well as "all prior rulings," and Ahdoot timely filed a notice of appeal from the order imposing sanctions against him

---

[12] We note that the written order's statement that the complaint is stricken in its entirety as part of the granting of the special motion to strike is inconsistent with the trial court's ruling at the hearing as reflected in the reporter's transcript. The reporter's transcript makes clear that the court struck only the quiet title cause of action when it granted the special motion to strike, and it struck the entire complaint as a sanction in granting the section 128.7 sanctions motion.

# DISCUSSION

Forde challenges the trial court's orders granting the special motion to strike and motions for sanctions. We will address each order in turn.

## A.   *Special Motion to Strike*

Section 425.16 provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

20

A trial court presented with a special motion to strike engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) To satisfy this burden, the plaintiff must demonstrate that each of the claims alleged is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) The plaintiff "'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' [Citations.]" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

We review the trial court's determination on a special motion to strike de novo, engaging the same two-step process as the trial court. (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1016-1017.)

1. *Order Striking the Quiet Title Cause of Action*

    a. *Step One—Arising From Protected Activity*

The determination whether Forde's quiet title cause of action arises from protected activity is somewhat hampered by Forde's failure to allege with any specificity the basis for the purported conflicting claims to the properties. The cause of action does not incorporate by reference any other allegations of the complaint. It simply alleges that,

21

on the date the complaint was filed, the Taylors, Hawrylack, and the prospective buyers of Maple 1 and Maple 2 "claim an interest in Maple 1 or Maple 2 adverse to [Forde's] interest or that a cloud exists upon [Forde's] title," and that none of the defendants have any right, title, or interest adverse to Forde's title.

In his appellant's opening brief, Forde asserts that the basis for his quiet title claim is certain conduct by the Taylors and Hawrylack (unrelated to their attempt to get the properties sold via the partition action) that he asserts constituted breaches of the first lawsuit's settlement agreement, which he alleges resulted in the forfeiture of their interests in the properties. Thus, he contends the claim is not an attack on the interlocutory judgment but instead challenges the Taylors' and Hawrylack's "pre-existing claims of interests in the properties."

There is no question the general allegations of the complaint include numerous allegations of purported breaches of the settlement agreement and assertions that the Taylors and Hawrylack have no interest in the properties due to those breaches. But Forde's argument on appeal that those allegations are the basis for his quiet title claim is inconsistent with his arguments in the trial court.

In his written opposition to the special motion to strike, Forde argued that "[t]he instant lawsuit emanates from information discovered after the Interlocutory Judgment . . . and the damage caused to [Forde] by this subsequently discovered information as relates to [Forde's] ownership interests and ownership share of properties under the Court's jurisdiction in the [partition action]. . . . The [partition

22

action] is merely background for the allegations in this matter." At the hearing on the motion, when the trial court observed that the quiet title cause of action is based upon what the Taylors and Hawrylack did in the partition action, Forde's counsel did not talk about the alleged breaches of the settlement agreement and forfeiture of their interests. Instead he responded: "It's more. I think it's more precisely the things they did to sell the property." When the court noted that the properties were sold pursuant to a court order in the partition action and that ownership and title were litigated in that action, counsel responded that the present lawsuit is based upon "subsequent actions . . . that never [have] been adjudicated before." In other words, in the trial court Forde linked his quiet title cause of action to all the other causes of action and asserted that all were based upon the same conduct, i.e., improprieties in the Taylors' and Hawrylack's efforts to have Maple 1 and Maple 2 sold through the partition action.

If there were any doubt that those efforts—rather than the Taylors' and Hawrylack's alleged forfeiture of their interests due to purported breaches of the settlement agreement—are the basis for Forde's quiet title claim, that doubt is removed by the last two paragraphs of the general allegations of the complaint. In those paragraphs, Forde alleges that the Taylors and Hawrylack "face personal bankruptcy if they are required to fulfill their contributions to the Maple properties and comply with their accounting requirements pursuant to the Settlement Agreement. The Receiver's account would not be of help to them because he has spent practically all of the rent money he has collected over the last three years. [¶] . . . [The Taylors

23

and Hawrylack] therefore sought court approval for a sale of both properties by the Receiver, which the Court granted despite [Forde's] clear showing that [the Taylors and Hawrylack] had no interest to sell pursuant to the Settlement Agreement. The court's order for the sale of the properties was entered on May 31, 2018."

The May 31, 2018 order is the interlocutory judgment in the partition action in which the trial court ordered, adjudicated and decreed that Forde, the Taylors, and Hawrylack are the owners, as tenants in common, of Maple 1 and Maple 2. Since the trial court in the partition action thus necessarily rejected Forde's assertion that the alleged breaches of the settlement agreement divested the Taylors and Hawrylack of their interests in the property, Forde's subsequent cause of action in the present case "seek[ing] to quiet title to the Maple properties against the claimed interests, if any, of [the Taylors and Hawrylack]" can only be based upon allegedly improper actions the Taylors and Hawrylack took in the partition action to secure the interlocutory judgment. Therefore, the trial court properly concluded that the quiet title cause of action arose from the Taylors' and Hawrylack's conduct in the exercise of their right of petition.

### b.     *Second Step—Probability of Prevailing*

Having found the quiet title cause of action arises from protected activity, we proceed to the second step, i.e., whether Forde demonstrated a probability of prevailing on his quiet title claim. Forde argues on appeal that he did so through the allegations of his verified complaint, which he asserts are sufficient under the reasoning of

24

*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931 (*Sweetwater*). But, as Forde acknowledges, the Supreme Court expressly stated in *Sweetwater* that a plaintiff seeking to demonstrate a probability of prevailing "'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" (*Id.* at p. 940.) And the Supreme Court repeated this rule five months later, in *Monster Energy Co. v. Schechter, supra,* 7 Cal.5th at page 788.

We are bound by the Supreme Court's pronouncements. Because Forde does not point us to any admissible evidence demonstrating a probability of prevailing on his quiet title cause of action, he has forfeited any assertion of error in the trial court's order striking the quiet title cause of action. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["'A judgment or order of the lower court is *presumed correct* . . . and error must be affirmatively shown'"].) Accordingly, the order granting the special motion to strike is affirmed to the extent it struck the quiet title cause of action.

### 2. *Written Order Striking Entire Complaint*

As noted, although the trial court made clear at the hearing on the special motion to strike that its order granting the motion was limited to striking the quiet title cause of action (the other three causes of action alleged against the Taylors and Hawrylack having been

dismissed by Forde),[13] the written order it subsequently signed granting the motion stated that the entire complaint was stricken. Forde argues that the striking of the entire complaint on the special motion to strike was error because the motion did not give notice that the Taylors and Hawrylack sought to strike the entire complaint and because the Taylors and Hawrylack did not have standing to move to strike the causes of action alleged against only the real estate professionals. In their respondents' brief, the Taylors and Hawrylack do not address these arguments in the context of the special motion to strike, instead arguing that they gave proper notice *in their sanctions motions* and that striking the entire complaint was an appropriate sanction.

We agree with Forde that the special motion to strike failed to provide adequate notice that the Taylors and Hawrylack sought to strike the causes of action alleged only against the real estate professionals. Indeed, although the motion asked the court to strike the entire complaint, it did not address the causes of action asserted only against the real estate professionals, particularly how those causes of action arose from the real estate professionals' exercise of their right of petition or free speech. (See § 425.16, subd. (b)(1) ["A cause of action

---

[13] The Taylors and Hawrylack argue that Forde's dismissal of the declaratory relief, cancellation of sale, and termination of receivership causes of action was filed on the same day as their special motion to strike, and therefore it was not effective to prevent them from being subject to the motion. But the record shows that Forde's request for dismissal was filed on June 17, 2019, the day before the motion was filed. That the clerk of the court did not complete the ministerial act of entering the dismissal until the next day does not impact the timeliness of that dismissal with regard to the special motion to strike or sanctions motions.

26

*against a person* arising from any act *of that person* in furtherance of *the person's right of petition or free speech* under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike"], italics added.) Therefore, the trial court's August 1, 2019 order striking the entire complaint upon granting the special motion to strike must be reversed with respect to the three causes of action alleged against only the real estate professionals.

   3.   *Award of Attorney Fees*

Forde did not challenge the trial court's award of attorney fees in his opening brief on appeal, and addresses it in his reply brief only to argue that the award should be reversed if we reverse the order granting the special motion to strike. Because we have affirmed the granting of the special motion to strike as to the only remaining claim alleged against the Taylors and Hawrylack, we affirm the order awarding attorney fees as well.

B.   *Sanctions Motions*

Forde and Ahdoot contend the trial court erred in granting the sanctions motions because (1) the Taylors and Hawrylack failed to comply with the safe harbor provisions of sections 128.5 and 128.7; (2) Forde's claims had merit and were not frivolous or asserted for an improper purpose; (3) the lis pendens were properly recorded based on the claims Forde alleged; and (4) neither section 128.5 nor section 128.7 authorize sanctions for recording lis pendens, because lis pendens are

27

not filed with the court.  Although we find that the record overwhelmingly supports the trial court's conclusion that the present complaint is frivolous and was filed for an improper purpose, we nevertheless must reverse the order granting the sanctions motions because the motions did not comply with the safe harbor provisions mandated by sections 128.5 and 128.7.

Section 128.5 provides that sanctions may be ordered under that section for an action or tactic that is frivolous, solely intended to cause delay, or filed in bad faith only under certain conditions and procedures. One such procedure is set forth in subdivision (f)(1)(B):  "If the alleged action or tactic is . . . the filing and service of a complaint . . . that can be withdrawn or appropriately corrected, a notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court, unless 21 days after service of the motion or any other period as the court may prescribe, the challenged action or tactic is not withdrawn or appropriately corrected."  (§ 128.5, subd. (f)(1)(B).) Section 128.7 prescribes a similar procedure for sanctions sought under its provisions:  "A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."  (§ 128.7, subd. (c)(1).)

28

As the statutory language makes clear, this 21-day period between service of the notice of a motion for sanctions under either statute and the filing of the motion is mandatory, although (as the Taylors and Hawrylack point out) that period may be shortened or lengthened by the court.  (§ 128.5, subd. (f)(1)(B) ["21 days after service of the motion *or any other period as the court may prescribe*"], italics added; § 128.7, subd. (c)(1) [same]; *Li v. Majestic Industrial Hills LLC* (2009) 177 Cal.App.4th 585, 594 [party seeking sanctions may seek an order shortening the 21-day safe harbor period].)  The Taylors and Hawrylack argue that the trial court did provide Forde (and Ahdoot) a safe harbor period when at the hearing on the Taylors' and Hawrylack's ex parte application for an order shortening time it ordered that the sanctions motion(s) were to be filed and served on June 18, 2019, six days after that hearing, and that the sanctions motion(s) would be heard on July 16, 2019.  Thus, the Taylors and Hawrylack argue, the court prescribed a different safe harbor period.

The problem with this argument is that it focuses only on the authority of the court to prescribe a longer or shorter safe harbor period and ignores the action that must be taken to start the period—service of the notice of the sanctions motion—and that that action must be followed by the "prescribed" period before the motion may be filed.  It does not assist the Taylors and Hawrylack that Forde and Ahdoot were put on notice through their ex parte application and the hearing on that application that they would be filing sanctions motions.  The "notice" given to Forde and Ahdoot through the ex parte application—while no doubt providing Forde with an opportunity to withdraw his claims

29

before the sanctions motion would be filed with the court (an opportunity he took advantage of with respect to three of his claims)— was not the notice mandated by sections 128.5 and 128.7. That notice requires compliance with section 1010. In other words, it must "be in writing, and . . . must state when, and the grounds upon which it will be made, and the papers, if any upon which it is to be based. If any such paper has not previously been served upon the party to be notified and was not filed by him, a copy of such paper must accompany the notice." (§ 1010.) As we previously held in *Galleria Plus, Inc. v. Hanmi Bank* (2009) 179 Cal.App.4th 535, strict compliance with the notice provisions is required. (*Id.* at p. 538 ["Strict compliance with the statute's notice provisions serves its remedial purpose and underscores the seriousness of a motion for sanctions"].) The Taylors' and Hawrylack's ex parte application clearly did not satisfy this provision.

Finally, we reject the Taylors' and Hawrylack's suggestion that the provisions of the sanctions statutes allowing the trial court to prescribe a safe harbor period other than a 21-day period give the court authority to prescribe a "no day" period.[14] In enacting the mandatory safe harbor provisions, the Legislature clearly intended that the party against whom sanctions are sought *must* be given an opportunity to

---

[14]    In fact, this is precisely what the Taylors and Hawrylack sought in their ex parte application to shorten time. Rather than asking the court to shorten the 21-day safe harbor period by setting a date for service of the sanctions motions and a separate date for filing the motions, they asked the court for an "<u>order shortening time and/or specially setting</u> the hearing" on their sanctions motion, and submitted a proposed order that provided a blank space for the court to fill in a single date on which the motion would be filed and served.

30

withdraw or correct the offending document, action, or tactic *after* being given proper notice (including the actual sanctions motion) and *before* the sanctions motion is filed. The Taylors' and Hawrylack's suggested interpretation cannot be reconciled with this clear intent.

Because the procedure used in this case did not comply with the safe harbor provisions of section 128.5 and 128.7, the trial court's order granting the motions for sanctions—in which it struck the entire complaint and imposed $16,178.35 in monetary sanctions against Forde and Adhoot—must be reversed.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## DISPOSITION

The July 16, 2019 order granting the Taylors' and Hawrylack's motions for sanctions, striking the complaint in its entirety and imposing monetary sanctions in the amount of $16,178.35 is reversed. The August 1, 2019 order granting the Taylors' and Hawrylack's special motion to strike is reversed in part and affirmed in part. The portion of the order striking the complaint in its entirety is reversed, and only the quiet title cause of action is stricken. All other provisions of the July 16, 2019 and August 1, 2019 orders are affirmed. The Taylors and Hawrylack shall recover their costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

WILLHITE, Acting P. J.

We concur:

COLLINS, J.

CURREY J.